## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

PAUL MINOR, on behalf of his minor child
A.M. and on behalf of all others similarly
situated,

                Plaintiff,

   v.

STURGIS HOSPITAL, INC.,

                Defendant.

Case No. _____

CLASS ACTION

JURY TRIAL DEMANDED

### CLASS ACTION COMPLAINT

Plaintiff Paul Minor, on behalf of his minor child A.M. ("Plaintiff") and on behalf of all others similarly situated (collectively, "Class members"), by and through his attorneys, brings this Class Action Complaint against Defendant Sturgis Hospital, Inc. ("Sturgis Hospital" or "Defendant"), and complains and alleges upon personal knowledge as to himself and information and belief as to all other matters.

### INTRODUCTION

1.     Plaintiff brings this class action against Defendant for its failure to secure and safeguard approximately 77,771 individuals' (including A.M.'s) personally identifying information ("PII") and personal health information ("PHI"), including names, contact information, Social Security numbers, financial account information, health insurance information, and medical information, including prescriptions and treatment records.

2.     Sturgis Hospital is a hospital located in Sturgis, Michigan.

3.     In approximately December, 2024 and again in June, 2025, an unauthorized third party gained access to Sturgis Hospital's network systems and accessed and acquired files

containing the PII/PHI of Sturgis Hospital's patients, including Plaintiff's minor child and Class members (the "Data Breach").

4.       Defendant owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII/PHI against unauthorized access and disclosure. Defendant breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect Plaintiff's minor child's and Class members' PII/PHI from unauthorized access and disclosure.

5.       As a result of Defendant's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiff's minor child's and Class members' PII/PHI was accessed and disclosed. This action seeks to remedy these failings and their consequences. Plaintiff brings this action on behalf of his minor child, A.M., and all persons whose PII/PHI was exposed as a result of the Data Breach, which Sturgis Hospital discovered in approximately December, 2024 and again in June, 2025.

6.       Plaintiff, on behalf of his minor child and all other Class members, asserts claims for negligence, negligence per se, breach of implied contract, unjust enrichment, and violations of the Michigan Consumer Protection Act, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

***Plaintiff Paul Minor***

7.       Plaintiff and his minor child A.M. are citizens and residents of Michigan.

8.       Plaintiff's minor child A.M. is a patient of Sturgis Hospital. As a condition of providing services to A.M., Sturgis Hospital required Plaintiff to provide it with A.M.'s PII/PHI.

9.      Based on representations made by Sturgis Hospital, Plaintiff believed that Sturgis Hospital had implemented and maintained reasonable security practices to protect A.M.'s PII/PHI. With this belief in mind, Plaintiff provided A.M.'s PII/PHI to Sturgis Hospital in exchange for receiving services from Sturgis Hospital.

10.     At all relevant times, Sturgis Hospital stored, shared, and maintained A.M.'s PII/PHI on its network systems, including the systems impacted in the Data Breach.

11.     Plaintiff received a notice letter from Sturgis Hospital notifying him that A.M.'s PII/PHI was in the files accessed and acquired by an unauthorized third party in the Data Breach.

12.     Had Plaintiff known that Sturgis Hospital does not adequately protect the PII/PHI it collects and maintains, he would not have agreed to provide A.M.'s PII/PHI to, or obtained services from, Sturgis Hospital.

13.     As a direct result of the Data Breach, Plaintiff's minor child A.M. has suffered injury and damages including, *inter alia*, a substantial and imminent risk of identity theft and medical identity theft; the wrongful disclosure and loss of confidentiality of her highly sensitive PII/PHI; time and effort lost attempting to mitigate the harm caused by the Data Breach; and deprivation of the value of her PII/PHI.

***Defendant Sturgis Hospital, Inc.***

14.     Defendant Sturgis Hospital, Inc. is a Michigan nonprofit corporation with its principal place of business located at 916 Myrtle Avenue, Sturgis, MI 49091. It may be served through its registered agent: P. Joseph Haas Jr., 112 South Monroe Street, Sturgis, MI 49091.

## JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2), because (a) there are 100 or more Class members, (b) at least one Class member is

a citizen of a state that is diverse from Defendant's citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

16.     This Court has general personal jurisdiction over Defendant because it is organized under the laws of this State and maintains its principal place of business in this District.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### *Overview of Sturgis Hospital*

18.     Sturgis Hospital provides a range of healthcare services, including medical imaging, laboratory testing services, and surgery.[1]

19.     In the regular course of its business, Sturgis Hospital collects and maintains the PII/PHI of its patients, including Plaintiff's minor child and Class members. Sturgis Hospital requires its patients to provide it with their PII/PHI, including the information stolen in the Data Breach, before it provides them services.

20.     Sturgis Hospital informs patients they have a responsibility to provide "a complete and accurate medical history."[2] Patients also have a responsibility to "receive [the] Notice of Privacy Practices available and posted in the Registration area."[3]

---

[1]     *Continued   Outpatient   Services*, STURGIS   HOSP., https://sturgishospital.com/wp-content/uploads/2023/06/brochure2.jpg (last accessed Sept. 29, 2025).
[2]     Patient Rights and Responsibilities, STURGIS HOSP., https://sturgishospital.com/wp-content/uploads/2020/09/Patient-Rights-and-Responsibiltites.pdf (last accessed Sept. 29, 2025).
[3] *Id.*

21.     Sturgis Hospital promises it "values the rights and respects the dignity of each of our patients."[4] It further promises patients have a right to "personal privacy," to "have your medical record read only by individuals directly involved in your treatment or the monitoring of its quality and by other individuals only on your written authorization," and to "have all communications and records related to your care be kept confidential."[5]

22.     Sturgis Hospital further promises patients' medical records "cannot be given to a third party without your permission."[6]

23.     Sturgis Hospital's website contains a Notice of Privacy Practices (the "Privacy Policy") that describes how Sturgis Hospital may use and disclose its patients' PII/PHI, including for treatment and billing services.[7]

24.     Sturgis Hospital acknowledges it is required by law to maintain the privacy of its patients' PII/PHI, provide them with the Privacy Policy, and follow the terms of the Privacy Policy.[8]

25.     In the Privacy Policy, Sturgis Hospital promises "Sturgis Hospital, any identified healthcare partners, all departments and units, any member of our hospital auxiliary group, all associates, and other hospital personnel are dedicated to protecting your medical information."[9]

26.     Sturgis Hospital further promises patients it "will not use or disclose your medical information for any other purpose without your written authorization."[10]

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Notice of Privacy Practices of Protected Health Information and Patient Grievance Procedure*, STURGIS HOSP. (Dec. 2, 2010), https://sturgishospital.com/wp-content/uploads/2020/09/Protected-health-information-and-Patient-Grievance.pdf (last accessed Sept. 29, 2025).
[8] *See id.*
[9] *Id.*
[10] *Id.*

27.    Plaintiff and Class members are current or former patients of Sturgis Hospital who provided their PII/PHI to Sturgis Hospital in exchange for obtaining healthcare services.

### The Data Breach

28.    In approximately December, 2024, Sturgis Hospital "detected unauthorized activity in a portion of [its] computer network."[11] Sturgis Hospital "detected further unauthorized activity in [its] network in June 2025."[12] The unauthorized third party that gained access to Sturgis Hospital's network systems accessed and acquired the PII/PHI of Sturgis Hospital's current and former patients, including "name, contact information, government identification number (such as a Social Security number), financial account details (such as a bank account number), health insurance details, and clinical information—including prescriptions, treatment records, and similar medical details."[13]

29.    Despite discovering the first intrusion occurring in December, 2024, and again in June, 2025, Sturgis Hospital waited until approximately September 18, 2025—over 9 months after the initial theft of PII/PHI—to begin notifying Plaintiff and Class members that the Data Breach occurred and that their PII/PHI was accessed and acquired by unauthorized persons.[14] "This extended timeline gave criminals substantial opportunity to monetize stolen data through identity theft, insurance fraud, or sale on dark web marketplaces before victims could take protective measures."[15]

---

[11] *A Message from Sturgis Hospital regarding a security event*, STURGIS HOSP. (Sept. 18, 2025), https://sturgishospital.com/a-message-from-sturgis-hospital-regarding-a-security-event/    (last accessed Sept. 29, 2025).
[12] *Id.*
[13] *Id.*
[14] *See id.*
[15] Lusana Molefe, *Sturgis Hospital reports dual cyberattacks affecting over 77,000 patients*, HIPAA TIMES (Sept. 26, 2025 5:13 PM), https://hipaatimes.com/sturgis-hospital-reports-dual-cyberattacks-affecting-over-77000-patients

30.     Defendant acknowledges that the Data Breach places Plaintiff and Class members in imminent danger of fraud and identity theft. The data breach notice on its website warns Plaintiff and Class members to "remain vigilant for unauthorized financial activity," and "report any suspicious activity to law enforcement."[16]

31.     Defendant's failure to promptly notify Plaintiff and Class members that their PII/PHI was disclosed, accessed, and stolen virtually ensured that the unauthorized third parties who exploited those security lapses could monetize, misuse, or disseminate that PII/PHI before Plaintiff and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiff and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

### Defendant Knew that Criminals Target PII/PHI

32.     At all relevant times, Defendant knew, or should have known, that the PII/PHI that it collects and stores was a target for malicious actors. Despite such knowledge, Defendant failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' PII/PHI from unauthorized disclosures and cyberattacks that it should have anticipated and guarded against.

33.     It is well known among companies that store sensitive personally identifying information that such information—such as the PII/PHI stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata

---

[16] *A Message from Sturgis Hospital*, *supra* note 11.

breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[17]

34.    Cyber criminals seek out PHI at a greater rate than other sources of personal information. In a 2025 report, Kroll found that "the healthcare industry was the most breached" in 2024.[18] The company found that 23% of the breaches that it handled responses for were from the healthcare industry, up from 18% in 2023.[19]

35.    PII/PHI is a valuable property right.[20] The value of PII/PHI as a commodity is measurable.[21] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[22] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[23] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

---

[17] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUS. INSIDER (Nov. 19, 2019, 8:05 AM), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

[18] *Data Breach Outlook*, KROLL, https://www.kroll.com/en/insights/publications/cyber/data-breach-outlook-2025 (last accessed Sept. 29, 2025).

[19] *See id.*

[20] *See* Marc van Lieshout, *The Value of Personal Data*, 457 Int'l Fed'n for Info. Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . ."), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[21] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (April 28, 2014), http://www.medscape.com/viewarticle/824192.

[22] Organization for Economic Co-operation and Development, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD ILIBRARY (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[23] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERT. BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

36.     As a result of the real and significant value of these data, identity thieves and other cyber criminals have openly posted credit card numbers, Social Security numbers, PII/PHI, and other sensitive information directly on various internet websites making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be readily aggregated with other such data and become more valuable to thieves and more damaging to victims.

37.     PHI is particularly valuable and has been referred to as a "treasure trove for criminals."[24] A cybercriminal who steals a person's PHI can end up with as many as "seven to ten personal identifying characteristics of an individual."[25]

38.     All-inclusive health insurance dossiers containing sensitive health insurance information, names, addresses, telephone numbers, email addresses, Social Security Numbers, and bank account information, complete with account and routing numbers, can fetch up to $1,200 to $1,300 each on the black market.[26] According to a report released by the Federal Bureau of Investigation's ("FBI") Cyber Division, criminals can sell healthcare records for 50 times the price of a stolen Social Security or credit card number.[27]

---

[24] *See* Andrew Steager, *What Happens to Stolen Healthcare Data*, HEALTHTECH MAG. (Oct. 20, 2019),        https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon (quoting Tom Kellermann, Chief Cybersecurity Officer, Carbon Black, stating "Health information is a treasure trove for criminals.").

[25] *Id.*

[26] *See* SC Staff, *Health Insurance Credentials Fetch High Prices in the Online Black Market*, SC MAG. (July 16, 2013), https://www.scmagazine.com/news/breach/health-insurance-credentials-fetch-high-prices-in-the-online-black-market.

[27] *See* Federal Bureau of Investigation, *Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain* (April 8, 2014), https://www.illuminweb.com/wp-content/uploads/ill-mo-uploads/103/2418/health-systems-cyber-intrusions.pdf.

39.    Criminals can use stolen PII/PHI to extort a financial payment by "leveraging details specific to a disease or terminal illness."[28] Quoting Carbon Black's Chief Cybersecurity Officer, one recent article explained: "Traditional criminals understand the power of coercion and extortion . . . By having healthcare information—specifically, regarding a sexually transmitted disease or terminal illness—that information can be used to extort or coerce someone to do what you want them to do."[29]

40.    Consumers place a high value on the privacy of their data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[30]

41.    Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII/PHI has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

---

[28] Steager, *supra* note 24.
[29] *Id.*
[30] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study*, 22(2) INFO. SYS. RSCH. 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

*Theft of PII/PHI Has Grave and Lasting Consequences for Victims*

42.    Theft of PII/PHI can have serious consequences for the victim. The FTC warns consumers that identity thieves use PII/PHI to receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[31][32]

43.    Experian, one of the largest credit reporting companies in the world, warns consumers that "[i]dentity thieves can profit off your personal information" by, among other things, selling the information, taking over accounts, using accounts without permission, applying for new accounts, obtaining medical procedures, filing a tax return, and applying for government benefits.[33]

44.    Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that almost 20% of victims of identity misuse needed more than a month to resolve issues stemming from identity theft.[34]

45.    Theft of PII is even more serious when it includes theft of PHI. Data breaches involving medical information "typically leave[] a trail of falsified information in medical records

---

[31] *See* Federal Trade Commission, *What to Know About Identity Theft*, FTC CONSUMER INFO., https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Sept. 29, 2025).
[32] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. § 1022.3(h). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 12 C.F.R. § 1022.3(g).
[33] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.
[34] Identity Theft Resource Center, *2023 Consumer Aftermath Report*, IDENTITY THEFT RES. CTR. (2023), https://www.idtheftcenter.org/publication/2023-consumer-impact-report/ (last accessed Sept. 29, 2025).

that can plague victims' medical and financial lives for years."[35] It "is also more difficult to detect, taking almost twice as long as normal identity theft."[36] In warning consumers on the dangers of medical identity theft, the FTC states that an identity thief may use PII/PHI "to see a doctor, get prescription drugs, buy medical devices, submit claims with your insurance provider, or get other medical care."[37] The FTC also warns, "If the thief's health information is mixed with yours it could affect the medical care you're able to get or the health insurance benefits you're able to use."[38]

46.    A report published by the World Privacy Forum and presented at the US FTC Workshop on Informational Injury describes what medical identity theft victims may experience:

a.    Changes to their health care records, most often the addition of falsified information, through improper billing activity or activity by imposters. These changes can affect the healthcare a person receives if the errors are not caught and corrected.

b.    Significant bills for medical goods and services neither sought nor received.

c.    Issues with insurance, co-pays, and insurance caps.

d.    Long-term credit problems based on problems with debt collectors reporting debt due to identity theft.

e.    Serious life consequences resulting from the crime; for example, victims have been falsely accused of being drug users based on falsified entries to their medical files; victims have had their children removed from them due to medical activities of the imposter; victims have been denied jobs due to incorrect information placed in their health files due to the crime.

---

[35] Pam Dixon & John Emerson, *The Geography of Medical Identity Theft*, WORLD PRIV. F. (Dec. 12, 2017), http://www.worldprivacyforum.org/wp-content/uploads/2017/12/WPF_Geography_of_Medical_Identity_Theft_fs.pdf.
[36] *See* Federal Bureau of Investigation, *Health Care Systems and Medical Devices at Risk . . .*, *supra* note 27.
[37] *See* Federal Trade Commission, *What to Know About Medical Identity Theft*, FTC CONSUMER INFO., https://www.consumer.ftc.gov/articles/what-know-about-medical-identity-theft (last accessed Sept. 29, 2025).
[38] *Id.*

f.  As a result of improper and/or fraudulent medical debt reporting, victims may not qualify for mortgage or other loans and may experience other financial impacts.

g.  Phantom medical debt collection based on medical billing or other identity information.

h.  Sales of medical debt arising from identity theft can perpetuate a victim's debt collection and credit problems, through no fault of their own.[39]

47.  There may also be time lags between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. On average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[40]

48.  It is within this context that Plaintiff and all other Class members must now live with the knowledge that their PII/PHI is forever in cyberspace and was taken by someone intending to use that information for any number of improper purposes and scams, including making the information available for sale on the black-market.

### *Damages Sustained by Plaintiff and Class Members*

49.  Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the disclosure, compromise, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII/PHI which remains in Defendant's possession;

---

[39] *See* Dixon & Emerson, *supra* note 35.
[40] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

(vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## CLASS ALLEGATIONS

50.    This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23.

51.    Plaintiff brings this action on behalf of his minor child A.M. and all members of the following Class of similarly situated persons:

> All persons whose personally identifiable information or personal health information was accessed in the Data Breach by unauthorized persons, including all persons who were sent a notice of the Data Breach.

52.    Plaintiff also brings this action on behalf of his minor child A.M. and all members of the following subclass of similarly situated persons (the "Michigan Subclass"):

> All persons residing in Michigan whose personally identifiable information or personal health information was accessed in the Data Breach by unauthorized persons, including all persons who were sent a notice of the Data Breach.

53.    Excluded from the Class are Sturgis Hospital, Inc., and its affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge.

54.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

55.    The members in the Class are so numerous that joinder of each of the Class members in a single proceeding would be impracticable. Sturgis Hospital reported to the Department of Health and Human Services that the Data Breach affected approximately 77,771 persons.[41]

56.    Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

    a.   Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class members' PII/PHI from unauthorized access and disclosure;

    b.   Whether Defendant had a duty not to disclose the PII/PHI of Plaintiff and Class members to unauthorized third parties;

    c.   Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff's and Class members' PII/PHI;

    d.   Whether Defendant breached those duties to protect Plaintiff's and Class members' PII/PHI; and

    e.   Whether Plaintiff and Class members are entitled to damages and the measure of such damages and relief.

57.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

58.    Plaintiff's claims are typical of the claims of the Class. Plaintiff's minor child, like all proposed members of the Class, had her PII/PHI compromised in the Data Breach. Plaintiff's minor child and Class members were injured by the same wrongful acts, practices, and omissions

---

[41] *Cases Currently Under Investigation*, DEP'T HEALTH & HUM. SERVS. (Sept. 18, 2025), https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf.

committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

59.    Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that he has no interests adverse to, or that conflict with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

60.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress from Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

61.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

62.     Sturgis Hospital owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting the PII/PHI it collected and shared.

63.     Sturgis Hospital knew or should have known the risks of collecting and storing Plaintiff's and all other Class members' PII/PHI and the importance of maintaining secure systems. Sturgis Hospital knew or should have known of the many data breaches that targeted companies that collect and store PII/PHI in recent years.

64.     Given the nature of Sturgis Hospital's business, the sensitivity and value of the PII/PHI it maintains, and the resources at its disposal, Sturgis Hospital should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring.

65.     Sturgis Hospital breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII/PHI entrusted to it—including Plaintiff's and Class members' PII/PHI.

66.     It was reasonably foreseeable to Sturgis Hospital that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII/PHI to unauthorized individuals.

67.     But for Sturgis Hospital's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their PII/PHI would not have been compromised.

68.     As a result of Sturgis Hospital's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, disclosure, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII/PHI which remains in Sturgis Hospital's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## COUNT II
## NEGLIGENCE PER SE

69.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

70.     Sturgis Hospital owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting the PII/PHI in its possession, custody, or control.

71.     Sturgis Hospital's duties arise from, *inter alia*, the HIPAA Privacy Rule ("Standards for Privacy of Individually Identifiable Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and E, and the HIPAA Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C (collectively, "HIPAA Privacy and Security Rules").

72.     Sturgis Hospital's duties also arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce,"

including, as interpreted by the FTC, the unfair act or practice by a business, such as Sturgis Hospital, of failing to employ reasonable measures to protect and secure PII/PHI.

73.    Sturgis Hospital violated HIPAA Privacy and Security Rules and Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiff's and other Class members' PII/PHI, by failing to provide timely notice, and by not complying with applicable industry standards. Sturgis Hospital's conduct was particularly unreasonable given the nature and amount of PII/PHI it obtains and stores, and the foreseeable consequences of a data breach involving PII/PHI including, specifically, the substantial damages that would result to Plaintiff and the other Class members.

74.    Sturgis Hospital's violation of the HIPAA Privacy and Security Rules and Section 5 of the FTCA constitutes negligence per se.

75.    Plaintiff and Class members are within the class of persons that the HIPAA Privacy and Security Rules and Section 5 of the FTCA were intended to protect.

76.    The harm occurring as a result of the Data Breach is the type of harm that the HIPAA Privacy and Security Rules and Section 5 of the FTCA were intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair practices or deceptive practices, caused the same type of harm that has been suffered by Plaintiff and Class members as a result of the Data Breach.

77.    It was reasonably foreseeable to Sturgis Hospital that their failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems,

would result in the release, disclosure, and dissemination of Plaintiff's and Class members' PII/PHI to unauthorized individuals.

78.    The injury and harm that Plaintiff and the other Class members suffered was the direct and proximate result of Sturgis Hospital's violations of the HIPAA Privacy and Security Rules and Section 5 of the FTCA. Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, disclosure, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII/PHI which remains in Sturgis Hospital's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## COUNT III
## BREACH OF IMPLIED CONTRACT

79.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

80.    In connection with receiving healthcare services, Plaintiff and all other Class members entered into implied contracts with Sturgis Hospital.

81.    Pursuant to these implied contracts, Plaintiff and Class members paid money to Sturgis Hospital, directly or through their insurance, and provided Sturgis Hospital with their PII/PHI. In exchange, Sturgis Hospital agreed to, among other things, and Plaintiff and Class members understood that Sturgis Hospital would: (1) provide healthcare services to Plaintiff and Class members; (2) collect, maintain, and utilize Plaintiff's and Class members' PII/PHI

to, among other things, facilitate the provision of services to Plaintiff and Class members; (3) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII/PHI; (4) protect Plaintiff's and Class members' PII/PHI in compliance with federal and state laws and regulations, industry standards, and Sturgis Hospital's representations; and (5) maintain the confidentiality of Plaintiff's and Class members' PII/PHI and protect it from unauthorized access, disclosure, theft, and misuse.

82.    The protection of PII/PHI was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and Sturgis Hospital, on the other hand. Had Plaintiff and Class members known that Sturgis Hospital would not adequately protect its patients' PII/PHI, they would not have agreed to provide Sturgis Hospital with their PII/PHI or received healthcare services from Sturgis Hospital.

83.    Plaintiff and Class members performed their obligations under the implied contract when they provided Sturgis Hospital with their PII/PHI and paid—directly or through their insurers—for services from Sturgis Hospital.

84.    Sturgis Hospital breached its obligations under its implied contracts with Plaintiff and Class members in failing to implement and maintain reasonable security measures to protect and secure their PII/PHI and in failing to implement and maintain reasonable security protocols and procedures to protect Plaintiff's and Class members' PII/PHI in a manner that complies with applicable laws, regulations, industry standards, and Sturgis Hospital's representations.

85.    Sturgis Hospital's breach of its obligations of its implied contracts with Plaintiff and Class members directly resulted in the Data Breach and the injuries that Plaintiff and all other Class members have suffered from the Data Breach.

86.     Plaintiff and all other Class members were damaged by Sturgis Hospital's breach of implied contracts because: (i) they paid—directly or through their insurers—for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft and medical theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII/PHI was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII/PHI has been breached; (v) they were deprived of the value of their PII/PHI, for which there is a well-established national and international market; (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vii) overpayment for services that were received without adequate data security.

## COUNT IV
## UNJUST ENRICHMENT

87.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

88.     This claim is pleaded in the alternative to the breach of implied contract claim.

89.     Plaintiff and Class members conferred a monetary benefit upon Sturgis Hospital in the form of monies paid to Sturgis Hospital for healthcare services and through the provision of their PII/PHI. Plaintiff and Class members did so with an implicit understanding that Sturgis Hospital would use a portion of these payments to protect the PII/PHI it collects and uses to provide services.

90.     Sturgis Hospital accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class members. Sturgis Hospital also benefitted from the receipt of Plaintiff's and Class members' PII/PHI, as this was used to facilitate their business operations and billing services.

91.     As a result of Sturgis Hospital's conduct, Plaintiff and Class members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that they paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

92.     Sturgis Hospital should not be permitted to retain the money belonging to Plaintiff and Class members because Sturgis Hospital failed to adequately implement the data privacy and security procedures for themselves that Plaintiff and Class members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

93.     Plaintiff and Class members have no adequate remedy at law.

94.     Sturgis Hospital should be compelled to provide for the benefit of Plaintiff and Class members all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

### COUNT V
### VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT
### MCL §§ 445.901, *et seq.* ("MCPA")
### *On Behalf of the Michigan Subclass*

95.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

96.     Plaintiff brings this claim on behalf of his minor child A.M. and on behalf of the Michigan Subclass.[42]

97.     Plaintiff and Sturgis Hospital are both "persons" under the MCPA. MCL § 445.902(1)(d).

---

[42] As used in this claim, "Class members" refers to members of the Michigan Subclass.

98.    The healthcare services that Sturgis Hospital provided to Plaintiff and Class members are "trade or commerce" pursuant to MCL § 445.902(1)(g).

99.    Sturgis Hospital made representations to Plaintiff and Class members that their information would remain confidential, particularly in their Privacy Policy.

100.    Sturgis Hospital did not disclose to Plaintiff and Class members that its data security was inadequate.

101.    Sturgis Hospital committed deceptive acts or practices in violation of the MCPA through its failure to adequately safeguard and maintain Plaintiff's and Class members' PII/PHI.

102.    Sturgis Hospital committed deceptive acts or practices by making at least the following representations regarding its data security with reason to know they were false:

  a. representing that its services have characteristics, uses, or benefits that they do not have (MCL § 445.903(1)(c));

  b. advertising its services with intent not to dispose of those goods or services as advertised or represented (MCL § 445.903(1)(g));

  c. failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer (MCL § 445.903(1)(s));

  d. making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is (MCL § 445.903(1)(bb)); and

  e. failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner (MCL § 445.903(1)(cc)).

103.    As a result of Sturgis Hospital's above-described conduct, Plaintiff and Class members have suffered damages from the disclosure of their information to unauthorized individuals.

104.    The injury and harm that Plaintiff and the other Class members suffered was the direct and proximate result of Sturgis Hospital's violations of the MCPA. Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, disclosure, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII/PHI which remains in Sturgis Hospital's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

**PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A.    Certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B.    Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C.    Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the Class, seeks appropriate injunctive relief designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard PII/PHI and to provide

or extend credit monitoring services and similar services to protect against all types of identity theft and medical identity theft;

   D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

   E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

   F. Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## **JURY TRIAL DEMANDED**

  Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: October 14, 2025     Respectfully submitted,

          /s/ *Benjamin W. Mills*
          Benjamin W. Mills
          **GRUEL MILLS NIMS & PYLMAN PLLC**
          99 Monroe Avenue NW, Suite 800
          Grand Rapids, MI 49503
          Tel: 616.235.5500
          Fax: 616.235.5550
          bwmills@gmnp.com

          Ben Barnow*
          Anthony L. Parkhill*
          **BARNOW AND ASSOCIATES, P.C.**
          205 West Randolph Street, Suite 1630
          Chicago, IL 60606
          Tel: 312.621.2000
          Fax: 312.641.5504
          b.barnow@barnowlaw.com
          aparkhill@barnowlaw.com

          *Counsel for Plaintiff*

          **Pro hac vice* forthcoming